**MARPLE TOWNSHIP, Appellant,**

v.

**DELAWARE COUNTY F.O.P. LODGE 27.**

Commonwealth Court of Pennsylvania.

Argued May 9, 1995.
Decided June 8, 1995.

Robert F. Papanno, for appellant.

S. Stanton Miller, Jr., for appellee.

Before PELLEGRINI and KELLEY, JJ., and KELTON, Senior Judge.

PELLEGRINI, Judge.

Marple Township (Township) appeals an order of the Court of Common Pleas of Dela-

ware County (trial court) dismissing the Township's petition to vacate an Act 111 grievance arbitration award.

The Township and the Township Police Department, represented by the Delaware County Fraternal Order of Police Lodge 27 (Lodge 27), are parties to a collective bargaining agreement. The agreement is subject to the terms of Act 111, Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–.27. In January of 1993, an Act 111 arbitration panel issued an Award effective for the contract years 1993 through 1995 concerning the assignment of patrol officers to the Detective Division. The Arbitration Award provided in part:

> *Detective Rank*—Any officer assigned to the Detective Division must be tested pursuant to the Civil Service Regulations and must receive the contractual pay differentials.

On April 5, 1993, Lodge 27 filed a grievance regarding the Township's assignment of Patrol Officer Gerald Christie to the detective division with a designation of "investigator" to replace Detective Blank, but without increased rank and pay differentials. Lodge 27 contended that the Township violated the collective bargaining agreement because Officer Christie was not tested pursuant to Civil Service regulations prior to his assignment, and did not receive the contractual pay differentials between patrol officer and detective. The relief, as set forth in Lodge 27's request for relief, was to "[r]escind the assignment of Officer Christie, and make no further assignments to the detective division, except as provided in the 1993–1995 Act 111 Arbitration Award." The Township denied the grievance, contending that it had a management prerogative to assign qualified patrolmen to perform investigative work, and that any assignment of a patrolman as an "investigator" was not a violation of the January 1993 Arbitration Award. The matter proceeded to grievance-arbitration and an Arbitrator was assigned.

The Arbitrator set forth the positions of the parties as follows:

## POSITIONS OF THE PARTIES
### TOWNSHIP'S POSITION

The Township assumes the position that it has:

1. The Township management has the right (prerogative) to assign qualified Patrolmen to perform investigative work in the investigative division of the Police Department (Exhibit T–1)
2. Should the Township decide to staff the Detective Division with a Detective, this provision will be followed as per the Act 111 Arbitration Award of January 20, 1993.
3. Any assignment as investigator should not be considered as a violation of the contract/arbitration award.

### UNION'S POSITION

The Union assumes the position as stated in the grievance that (Joint Exhibit III):

1. The Township must test officers assigned to the Detective Division pursuant to Civil Service regulations (Exhibit G–4 and G–5).
2. The Township must pay the contractual pay differential for 'Detective' whenever Patrolmen are assigned as Investigators to the Detective position (Join Exhibit III).
3. The Township cannot assign Officer Christie as plainclothes Investigator and this temporary assignment must be rescinded (Exhibit T–8).

From those positions the Arbitrator refashioned the issues as follows:

### ISSUES OF THE CASE

In reviewing the testimony and evidence presented before me by both parties, I have found it most imperative to consider, in the rationale of my decisions, the following issues in this case:

1. Is the job description as written for the 'Detective' and 'Investigator' proper? If not, what shall be the finding/recommendations of the Arbitrator?
2. What is the current status of the Civil Service position of 'Detective' in the

Investigative Division of the Police Department?

3. Can the Township *temporarily* transfer qualified Patrolmen from the Uniform Division to the position of 'Detective' in the Detective Department section of the Investigative Division of the Police Department?

4. Can the Township temporarily transfer qualified Patrolmen from the Uniform Division to other positions in the Investigative Division which are not Civil Service positions, i.e. Juvenile Specialists, Photo Lab—Evidence Technician, etc.?

5. What is the correct wage to be paid to Officers temporarily assigned to other inter-divisional positions within the Investigative Division of the Police Department or intra-divisional transfers within the Uniform or Investigative Divisions?

6. Must the Township pay the contractual pay differential for 'Detective' whenever Patrolmen are assigned as Investigators to the Detective position?

7. Must the Township test Officers assigned to the Detective Division pursuant to Civil Service regulations?

8. Must the Township rescind the indefinite temporary assignment of Officer Christie as plainclothes Investigator? If not, what shall be the finding/recommendation of the Arbitrator?

The Arbitrator then issued a forty-two page decision [1] resulting in a fourteen-paragraph order that:

1. The job description, Detective/Investigator, is improperly prepared.

2. The Township shall prepare job descriptions for all non-Civil Service positions in the Investigative Division, including the position of Detective as herein noted in Item 1 of the Discussion–Opinion of the Arbitrator.

3. The newly created job descriptions shall be written, evaluated, and a base rate (wage) shall be established for each new job title and the results negotiated with the Union for acceptance, exclusive of the position Detective, which is already established.

4. The new job titles and wage schedule for non-Civil Service jobs shall become a part of the Collective Bargaining Agreement.

5. If the parties negotiate an agreement that the non-Civil Service jobs will come under Civil Service, they will then post the job(s) for bid and follow the rules and regulations for Police Officers of the Township Civil Service Commission (Exhibit G–4) and the First Class Township Code (Exhibit G–5).

6. There presently exists a vacancy(s) of the Civil Service position of Detective in the Criminal Investigations Section of the Investigative and Records Division of the Marple Township Police Department. This position(s) will be filed immediately, as per the Township Civil Service Commission, Rules and Regulations for Police Officers and Civil Service law, First Class Township Code.

7. The Township may temporarily transfer qualified Patrolmen from the Uniform Division to the position of 'Detective.'

8. A temporary transfer shall not exceed a period of three (3) months after which time the Patrolman must revert to his former position or the Township must deem the officer qualified for provisional

---

1. Under "Arbitrator Comments," the Arbitrator stated:

The case before me reflects a classic example of inequitable or unequal compensation for like or similar work.

The job description, as presently written, for the Detective/Investigator job title, though both similar in job duties, pay different wages and benefits to the Officers concerned because of mere semantic usage.

Harbored within the mirage of departmental transfers, by using the job title Investigator to achieve lower labor costs in wages and benefits, is lost the true essence of the parties' dilemma, notably that of a lack of a mutually developed wage payment plan based on formal job description and evaluation practices for both Civil Service and non-Civil Service positions. Coupled with the above problems, no contractual language has been entered into by the parties in the handling of temporary inter-departmental transfers, which only adds 'fuel to the fire.'

appointment to the position, as per Section 641 of the 'First Class Township Code' (Exhibit G–5) and proceed accordingly.

9. In no event shall the Township temporarily assign officers to the Detective position whose cumulative continuous assignments exceed six (6) months, after which time the Detective's position shall be up for permanent 'bid' as per the Township Civil Service Commission's 'Rules and Regulations for Police Officers' and the 'First Class Township Code.'

10. The Township may temporarily transfer Officers for the convenience of the Township from a Civil Service position to a non-Civil Service position providing the Officers so transferred shall retain all of their rights, wages, seniority and benefits accrued to them in their normally assigned Civil Service position.

   a. Officers so transferred shall be compensated at the higher of his present or job title rate to which transferred.

   b. In situations involving temporary transfers for the convenience of the Officer from a Civil Service position to a non-Civil Service position, the parties shall, subject to arbitration provisions of the contract:

   1) Mutually agree upon a job title wage for the non-Civil Service positions.

   2) Mutually agree upon the wage the transferee shall receive, i.e. either the job title wage or the Officer's prevailing wage.

   3) Mutually agree upon what and how benefits will be accrued or administered when such transfer occurs.

   c. The non-Civil Service job titles and wage shall become a part of the Collective Bargaining Agreement.

11. Until such time as the parties mutually develop job descriptions and rates of pay for those non-rated Civil Service jobs, all Officers so temporarily transferred shall receive their normally assigned job rate of pay, seniority and accrued benefits.

12. The Township must pay the rank differential to those Officers temporarily assigned to act in the rank of Detective, as delineated in Item 18 and Item 19, page 17, of the Collective Bargaining Agreement effective to the date that Officer Christie was assigned to the Criminal Investigative Division, i.e. March 10, 1993, and thereafter.

13. The Township does not have to test Officers assigned temporarily to the Detective Division pursuant to Civil Service regulations as I rule that the 'testing' so required is only applicable for permanent promotion requirements and not temporary assignments.

14. The assignment of Officer Christie is not rescinded, nor will I deny the Township the right to make temporary assignments to the Detective position, provided that the Township complies to the Arbitrator's decision as I have outlined in my Discussion–Opinion of Arbitrator in these matters.

The Township appealed to the trial court which affirmed, finding that the Arbitrator's Award properly fashioned a practical solution to the problem, and believing that continued usage of the term "Investigator" and transfer policy would only result in the parties appearing again in arbitration. The Township filed the instant appeal.

As before the trial court, the Township contends that the Arbitrator erred in two ways: (1) he decided matters that were not submitted to arbitration in that the matter submitted was limited to rescission of Officer Christie's assignment as an investigator, and that no further assignment be made except as provided for in the 1993–95 Act 111 arbitration award; and (2) as to the matter that was within his jurisdiction, the Arbitrator's decision interfered with inherent managerial prerogatives and modified the existing collective bargaining agreement. For its part, at oral argument, Lodge 27 agreed, in part, that the arbitrator's decision exceeded what was before him, but contends that the relief it requested did not violate any inherent management rights that the Township had.

Recently, in *Pennsylvania State Police v. Pennsylvania State Trooper's Association*

(Betancourt), —— Pa. ——, 656 A.2d 83 (1995), our Supreme Court changed our scope of review in Act 111 grievance arbitrations from the "essence test," the test that is applicable to all other private and public collective bargaining agreements, to the "narrow certiorari" standard. According to the Supreme Court:

> the narrow certiorari scope of review limits courts to reviewing questions concerning: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights....

> An arbitrator's powers are limited. He or she may not mandate that an illegal act be carried out; he or she may only require a public employer to do that which the employer could do voluntarily. Furthermore, the award must encompass only terms and conditions of employment and may not address issues outside of that realm. An error of law alone will not warrant reversal under the narrow certiorari scope of review. (Citations omitted.)

Subsumed within the Arbitrator's decision is a finding that there was no inherent managerial right in the Township to assign patrol officers to the Detective Division. Under the narrow certiorari test, that matter was well within the Arbitrator's jurisdiction, involving an interpretation of the collective bargaining agreement on how officers were to be assigned to the Detective Division and the pay differential they were to receive. If the arbitrator had limited himself to the issues presented and had given the relief that Lodge 27 requested, or for that matter, anything remotely resembling what it requested, we would be required to affirm under the narrow certiorari test. Nor do we believe this outcome would be different even if we applied the normal "essence" test.

As to the issues that the arbitrator thought should be addressed but were not submitted, those were not within his jurisdiction to decide. No matter what scope of review is used, an arbitrator does not have a roving commission to do what he or she believes is necessary to put everything right, to construct a "better agreement." Arbitrators are required to address the issues sub-

mitted within the context of the positions of the parties and effectuate the relief requested, not to reform the collective bargaining agreements. When that occurs, it makes grievance-arbitration unworkable, because the parties, even the one requesting the arbitration, fear they may get an answer to a question not submitted.

Before the Arbitrator rewrote the contract, he did find that the Township violated the contract when it made assignments of investigators to the Detective Division. Consequently, we reverse the trial court order affirming the Arbitration Award and will enter an order granting the relief that Lodge 27 requested, i.e., rescinding the assignment of Officer Christie as an Investigator, and order that no officer be assigned to the Detective Division until tested pursuant to Civil Service regulations and that upon assignment, the officer is to receive the contractual pay differential.

## ORDER

AND NOW, this 8th day of June, 1995, the order of the Court of Common Pleas of Delaware County, dated July 20, 1994, at No. 94–1394, is reversed. It is ORDERED that the assignment of Officer Christie as an Investigator is rescinded, and that before any officer is assigned to the Detective Division, he or she must be tested pursuant to Civil Service regulations and must receive the contractual pay differential.