IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wage and Policy Committee of the    :
City of Arnold Police Department,    :
    :
    Appellant    :
    :
    v.    : No. 47 C.D. 2018
    : Argued: October 15, 2018
City of Arnold, Pennsylvania    :


BEFORE: HONORABLE P. KEVIN BROBSON, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK    FILED: August 9, 2019


The Wage and Policy Committee of the City of Arnold Police Department (Committee) appeals the December 6, 2017 order of the Westmoreland County Court of Common Pleas (trial court) affirming an interest arbitration award under Act 111[1] between the Committee and the City of Arnold, Pennsylvania (City). The Committee contends that the trial court erred in affirming the retroactive

---

[1] The Policemen and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§217.1–217.10 (commonly referred to as Act 111). "Generally, Act 111 establishes a right to collectively bargain concerning the terms and conditions of employment . . . and is designed to alleviate labor strife in occupations involving critical government functions by, *inter alia,* providing an expedited means of dispute resolution, with limited judicial intervention." *Borough of Ellwood City v. Ellwood City Police Department Wage & Policy Unit*, 825 A.2d 617, 621 (Pa. 2003) (citations omitted).

modification of minimum age and years-of-service pension eligibility requirements declared by the panel majority. For the following reasons, we reverse and remand.

In relevant part, City of Arnold Pension Ordinance No. 3 of 1987 (Ordinance No. 3) provides that each eligible police officer "shall be entitled to receive a pension benefit provided he has completed at least twenty-five (25) Years of Continuous Service with the [City] and has attained age fifty-five (55)." Reproduced Record (R.R.) at 14a. On April 11, 1988, the Committee and the City adopted a memorandum of understanding (MOU) memorializing the following agreement between the parties regarding police officer pensions:

> The pension rights of Police Officers hired by the [City] after January 1, 1988, shall be governed by Ordinance No. 3 of 1987, which was enacted on October 1, 1987, and which complies with the terms and conditions of the Municipal Pension Plan Funding Standard and Recovery Act of the Commonwealth of Pennsylvania[, Act of December 18, 1984, P.L. 1005, *as amended*, 53 P.S. §§895-101 – 895-1131 (Act 205)].

R.R. at 20a.

In 1997, the City's police pension plan was "amended and restated in its entirety" by City of Arnold Pension Ordinance No. 6 of 1997 (Ordinance No. 6), effective October 14, 1997. R.R. at 24a. Section 1.13 of Ordinance No. 6 provides:

> "Normal Retirement Date" shall mean the date when [an eligible employee] has attained age 50 and completed 20 years of service for Officers hired prior to January 1, 1988 and for Officers hired since January 1, 1988 when a Participant has attained age 55 and completed 20 years of service.

*Id.* at 25a. Thus, Ordinance No. 6 maintained attaining age 55 as an eligibility requirement for police officers hired after January 1, 1988, but reduced the years-of-

2

service requirement from 25 to 20 years.  Like Ordinance No. 3, Ordinance No. 6 contained provisions concerning compliance with Act 205, including the following:

> PROVISIONS TO COMPLY WITH [ACT 205]
>
> \* \* \*
>
> The Chief Administrative Officer of the Pension Plan shall determine the financial requirements of the Plan on the basis of the most recent actuarial report and shall determine the minimum obligation of the [City] with respect to funding the plan for any given Plan Year. . . .
>
> Prior to the adoption of any benefit plan modification by the [City], the Chief Administrative Officer of the [pension plan] shall provide to [City Council] a cost estimate of the proposed benefit plan modification.  Such estimate shall be prepared by an Approved Actuary, which estimate shall disclose to [City Council] the impact of the proposed benefit plan modification on the future financial requirements of the Plan and the future minimum obligation of the [City] with respect to the Plan.

R.R. at 36a.

Subsequently, the Committee and the City adopted a collective bargaining agreement (CBA) covering years 2004 to 2008, followed by a CBA effective for years 2009-2013.[2]  Both CBAs provide minimum *50 years of age* and *20 years-of-service* pension eligibility requirements, and both contain the same language regarding the incorporation of pension benefits:

> All pension benefits *not in conflict with any sections of this Article* and adopted by ordinance and in existence at the time of the signing of this Agreement are incorporated

_____

[2] In relevant part, Section 1 of Act 111, 43 P.S. §217.1, provides that policemen employed by the Commonwealth or a political subdivision of the Commonwealth have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including pensions and other benefits, and the right to settle their disputes in accordance with the Act.

3

herein by reference into this *Agreement including but not limited to . . .* Ordinance No. 3 of 1987, enacted October 1, 1987.

R.R. at 65a-66a, 96a-97a (emphasis added).  Ordinance No. 6 was not among the 12 ordinances specifically identified in the CBAs.  *Id.*

After the 2009-2013 CBA expired, it remained in force, as reflected in an MOU executed by the parties on May 13, 2014,[3] while the parties conducted negotiations for a new CBA.  After reaching an impasse, the parties timely and jointly requested interest arbitration pursuant to Act 111.[4]

On June 23, 2014, prior to the interest arbitration, the Committee processed a grievance for retired police officer Michael Ondo.  Officer Ondo retired on a deferred vested benefit and contested the City's position that he would have to wait an additional five years to collect his pension benefits.  The City contended that the officer had to attain age 55 and complete 20 years of service *per Ordinance No. 6*, while the Committee relied upon the CBA, which provided 50/20 age and years-of-service eligibility requirements.

On August 11, 2014, the Committee requested a list of arbitrators; thereafter, the parties agreed to place the grievance on hold while they negotiated a resolution.  No agreement was reached, and on April 8, 2016, the Committee again notified the City that it was proceeding to arbitration.  The parties subsequently

---

[3] "Except as stated herein, any and all other terms, conditions, benefits, payments and/or emoluments, as defined and identified in the current [CBA] as extended until the implementation of the 2014-2018 [CBA] shall remain in full force and effect as they may relate to any new hire Police Officer."  R.R. at 109a.

[4] "Interest arbitration" is the dispute resolution process utilized when an employer and a union are unable to agree on the terms of a potential collective bargaining agreement.  *Michael G. Lutz Lodge No. 5 of Fraternal Order of Police v. City of Philadelphia*, 129 A.3d 1221, 1222 n.2 (Pa. 2015).

agreed to place the matter on hold during the pendency of the Act 111 interest arbitration. Supplemental Reproduced Record (S.R.R.) at 13b-14b.

Both the Committee and the City referenced pension benefits in their statements of issues in dispute submitted to the arbitration panel for the contract period beginning January 1, 2016.[5] S.R.R. at 157b-59b, 160b-66b. The Committee's submission stated that "[t]he Unit is requesting that overtime be calculated into Pensions." S.R.R. at 159b. In relevant part, the City specifically requested the following:

> Article XVII, Pensions - Confirm the normal retirement date for officers prior to January 1, 1988 and since *in accordance with Section 1.13 of the City of Arnold Police Pension Plan as amended and restatement effective October 14, 1997* [*Ordinance No. 6*] and establish the minimum pension available under the Third Class City Code[6] for any new hire with all officers contributing to the maximum amount permitted under the Third Class City Code.

S.R.R. at 164b (emphasis added). As noted above, Section 1.13 of Ordinance No. 6 defines normal retirement date as the date an officer attains age 55 and has completed 20 years of service.

---

[5] Section 4(a) of Act 111, 43 P.S. §217.4(a) (emphasis added), provides that,

> [i]f in any case of a dispute between a public employer and its policemen or firemen employes the collective bargaining process reaches an impasse and stalemate, or if the appropriate lawmaking body does not approve the agreement reached by collective bargaining, with the result that said employers and employes are unable to effect a settlement, then either party to the dispute, *after written notice to the other party containing specifications of the issue or issues in dispute*, may request the appointment of a board of arbitration.

[6] Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §§35101-39701.

The arbitration panel[7] conducted a hearing, held several executive sessions, and issued an award dated November 16, 2016.[8] R.R. at 2a-9a. The panel's majority decision includes the following contested provision:

> **Article XVII, Pensions** – The evidence demonstrates that in 1987, the [City] adopted Ordinance No. 3 of 1987 in accordance with the requirements in effect under [Act 205] establishing that for any officer hired on or after January 1, 1988, the officer would need to complete at least twenty-five (25) years of continuous service with the employer and must attain the age of fifty-five (55) in order to be eligible to receive a normal retirement pension benefit. As a result, Article XVII should be drafted to more clearly reflect this requirement *for officers hired on or after January 1, 1988* and the superannuation requirements for those officers shall be a minimum of twenty-five (25) years of service and a minimum age of fifty-five [(55)]. Officers hired before January 1, 1988 were unaffected by the Ordinance Amendment and no changes are intended by operation of this provision of the Award for officers hired before January 1, 1988.

R.R. at 5a (emphasis added). The award does not address Ordinance No. 6.

The partial arbitrator for the Committee issued a dissent, challenging the implementation of the 55/25 age and years-of-service pension eligibility requirements as a unilateral action by the City on a mandatory subject of collective

---

[7] The arbitration panel consisted of William Miller, Jr., Esq., as the neutral arbitrator, Michael Palombo, Esq., the City-appointed arbitrator, and Ronald Retsch, Esq., the arbitrator appointed by the Committee.

[8] The copy of the arbitration award submitted as part of the record indicates that the City's arbitrator signed on October 31, 2016, the Committee's arbitrator signed on November 4, 2016, and the neutral arbitrator signed on November 16, 2016. The Committee inconsistently identifies the award as dated either November 11, 2016 or November 16, 2016 in different portions of its brief. Committee's Brief at 7, 26, 35. The trial court opinion identifies the arbitration award as "dated November 11, 2017." Committee's Brief, Appendix A-1 at 6. However, the record reflects that November 16, 2016 is the correct date. R.R. at 7a.

bargaining that was both inconsistent with the terms of the parties' CBA and impermissibly retroactive. *Id.* at 8a.

On December 15, 2016, the Committee filed a petition to review/vacate the arbitration award with the trial court, asserting that: (1) the arbitrators lacked jurisdiction to modify pension eligibility requirements retroactively; (2) the retroactive modification violated the constitutional rights of police officers employed by the City since January 1, 1988; and (3) the arbitration panel exceeded its powers under Act 111 as to any modification to the police pension effective prior to January 1, 2016, which is the effective date for the issues in dispute submitted to the panel and the effective date of the interest arbitration award. S.R.R. at 4b-26b.

On December 6, 2017, the trial court issued an opinion and order denying the Committee's petition. The trial court first noted that the pension benefits established in Ordinance No. 3 were in accord with Act 205 and agreed to by the parties in the April 11, 1988 MOU. Additionally, subsequent CBAs between the parties expressly incorporated Ordinance No. 3 and the MOU by reference. The trial court noted the Committee's assertion that Ordinance No. 3 was superseded by Ordinance No. 6 in 1997 and again by the parties' CBAs. However, the trial court determined that no evidence was offered to establish that Ordinance No. 6 complied with the requirements of Act 205, and none of the CBAs specifically incorporates Ordinance No. 6. The trial court acknowledged that the jurisdiction of the arbitration panel was limited to the issues raised, but determined that the City's letter of September 10, 2015, "included the pension benefit age/service requirement issue." Trial court op. at 5. Thus, the trial court rejected the Committee's argument that the arbitration panel exceeded its jurisdiction.

7

The trial court further concluded that the award does not require the City to perform an illegal act, stating that the award "simply clarifies the minimum age/service requirements for pension benefits eligibility in light of the statutory requirements of Act 205, Ordinance No. 3 of 1987, and the MOU of April 11, 1988." Trial court op. at 5. According to the trial court, "the evidence established that [Ordinance No. 3] is the only lawfully executed ordinance" related to the minimum age and service requirements for pension benefits eligibility. *Id.* Consequently, the trial court concluded that an award declaring that the requirements of Ordinance No. 3 govern does not compel the performance of an illegal act.

Finally, the trial court rejected the Committee's assertion that the retroactive application of the 55/25 age and years-of-service eligibility requirements to all hires from January 1, 1988, unconstitutionally impairs the contractual rights of existing employees. In doing so, the trial court relied on our decision in *Millcreek Township Police Association v. Millcreek Township*, 960 A.2d 904, 911 (Pa. Cmwlth. 2008) (constitutional concerns are raised when there are unilateral changes in contractual benefits, not changes that are entered by mutual agreement in a contract or by an Act 111 panel). The trial court stated that the award is not the result of a unilateral change but, rather, the culmination of a statutory process in which the Committee actively participated.

On appeal to this Court, the Committee argues that the arbitration panel exceeded its powers and lacked jurisdiction to issue a modification of pension benefits retroactively affecting officers hired prior to January 1, 2016. In this regard, the Committee contends that the issues submitted by the City were too broad to provide fair notice that it was seeking retroactive modification of pension eligibility requirements. The Committee further asserts that the arbitration award violated

8

police officers' constitutional rights by unilaterally and retroactively modifying officers' vested pension benefits, and that the arbitration panel exceeded its powers by issuing an award that compelled the performance of an illegal act.[9]

The City counters that the arbitration panel did have jurisdiction to issue its award because the City properly submitted age and length-of-service pension eligibility requirements as issues for arbitration. The City further argues that the arbitration award did not unconstitutionally modify police officers' vested pension rights retroactively, but merely clarified existing pension eligibility requirements. Relatedly, the City asserts that, as the mutually agreed-upon result of arbitration, the award could not constitute a unilateral modification of vested pension rights. The City also argues that the record does not confirm that Ordinance No. 6 was enacted in compliance with Act 205.

Initially, we note that, "judicial review of an Act 111 interest arbitration award is proper only within the limited realm of narrow certiorari." *Michael G. Lutz Lodge No. 5, of Fraternal Order of Police v. City of Philadelphia*, 129 A.3d 1221, 1227 (Pa. 2015) (citation omitted). "Under this narrow certiorari scope of review, a court may review arbitration awards only to consider questions concerning: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's power; and (4) deprivation of constitutional rights." *Id.*

We first address the Committee's assertion that the arbitration panel lacked authority to consider an issue that was not raised in the City's demand for arbitration. Pennsylvania courts have repeatedly affirmed that an arbitration panel

---

[9] The Committee also asserts that the panel majority impermissibly awarded a modification of pension benefits without first requiring a cost study pursuant to Act 205. Committee's brief at 31.

exceeds its authority when it addresses issues that were not properly submitted in accordance with Section 1 of Act 111.[10] *See, e.g.*, *Michael G. Lutz Lodge No. 5*, 129 A.3d at 1230-31; *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 850 A.2d 846, 853-54 (Pa. Cmwlth. 2004), vacated in part, 886 A.2d 682 (Pa. 2005); *Arbitration Between Lower Yoder Township Police & Lower Yoder Township*, 654 A.2d 651, 654 (Pa. Cmwlth. 1995) (en banc).

In *Lower Yoder Township*, after the parties reached an impasse in their negotiations for a new collective bargaining agreement, the Lower Yoder Township Police notified the township of its intent to proceed to arbitration. The notice for binding arbitration stated that the following issues were in dispute:

> (a) Compensation and Wages;
> (b) Working Conditions, including maintenance of cruisers and other police equipment;
> (c) Retirement Pensions and Other Benefits;
> (d) Shift Differentials;
> (f) [sic] Length of Contract;
> (g) Department Manning;
> (h) Extra Shift Scheduling;
> (i) Uniforms;
> (j) Weapons;

---

[10] Although this principle has sometimes been framed as an excess of arbitrators' *jurisdiction*, our Supreme Court has clarified that:

> The distinction between authority and jurisdiction is subtle but important. As our Court has explained, "Jurisdiction and power are not interchangeable . . . [j]urisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result." [*Riedel v. Human Relations Commission of the City of Reading*, 739 A.2d 121, 124 (Pa. 1999)].

*Michael G. Lutz Lodge No. 5*, 129 A.3d at 1225 n.2.

(k) Sick Days;
(l) Any other matters presented to the Board of Arbitrators that are appropriate under 43 P.S. Sec. 217.1.

654 A.2d at 653. As in the present case, no record was made of the arbitration proceeding by either party. *Id.*

The issues on appeal to this Court were whether the arbitrators exceeded their authority in creating provisions for: (1) a three-year contract term; (2) a guaranteed wage/no layoff clause; and (3) the creation of the rank of lieutenant. We began our analysis by observing as follows:

> An interest arbitration award under Act 111 can embrace only those issues which the party requesting arbitration has specified in the written notice of arbitration. Section 4 of Act 111, 43 P.S. §217.4(a), clearly states that interest arbitration can be triggered only by a party giving written notice to the other party "containing specifications of the issue or issues in dispute . . . ." Section 4 of Act 111 is a codification of the longstanding common law rule that arbitrators must decide all the issues presented to them, and only those issues, *Dickerson v. Rorke*, 30 Pa. 390 (1858), and "every presumption is made in favor of the award . . . ." *Finch v. Lamberton*, 62 Pa. 370, 373 (1870). *See also Carr v. Joyce*, 74 D. & C.2d 288, 293-94 (1975) (applying these principles to Act 111). The importance of the specification of issues is underscored by Section 5 of Act 111, 43 P.S. §217.5, which requires that the notice by the Police under Section 4, specifying the issues, must be "served upon the head of the governing body of the local unit involved." That requirement of formal service attests to the importance of identifying in advance the issue to be subject to interest arbitration.

654 A.2d at 653-54.

In *Lower Yoder Township*, we first concluded that the arbitrators did not exceed their powers by awarding a three-year contract term because the police raised the issue of the length of the contract in the notice of binding arbitration. Next,

11

we determined that the guaranteed wage/no layoff clause was a resolution of the issue of compensation and wages also raised by police in the notice.

However, we concluded that "no issue listed in the notice . . . can fairly be construed to embrace the creation of a new position of officer rank." 654 A.2d at 654. We explained that, "[a]s a principle of fairness, Act 111 requires that both parties have advance notice of the issues which are at stake." *Id.* We held that, because the issue was not raised in the notice of arbitration, "the [arbitrators] had no jurisdiction under Act 111 to consider creating a new position, and, accordingly, the arbitrators exceeded their powers in this respect." *Id.*

Subsequently, in *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, we considered whether an interest arbitration panel lacked jurisdiction to issue an award requiring the City of Pittsburgh to continue to offer current health care providers to union (FOP) members. The trial court granted the City of Pittsburgh's petition to vacate that section of the arbitration award, holding that the arbitrators lacked jurisdiction to address the issue because the FOP had not given the City of Pittsburgh notice of that demand as required by Section 4(a) of Act 111.

In our analysis, quoting *Lower Yoder Township*, we again stressed the importance of the notice provision in Act 111. 850 A.2d at 853.

> While the FOP argues that it raised the issue of the identity and number of insurance providers that the [City of Pittsburgh] must offer its employees and retirees in Issue # 5, nowhere contained within that issue or any of the other issues does the FOP raise a demand regarding the identity and the number of insurance providers that the [City of Pittsburgh] must offer its employees and retirees. While there are certain times when an issue may be subsumed in another issue such as in *City of Wilkes-Barre v. City of Wilkes-Barre Police Benevolent Association*, 814 A.2d

12

> 285 (Pa. Cmwlth. 2002), where we held that an employer's notice of four proposals to curb health care costs was sufficient to allow the arbitrators to a change of plan with the same insurer, *where a demand is a major one or cannot be fairly subsumed within an issue, it must be specifically raised. . . .* [*See Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 561 A.2d 1312 (Pa. Cmwlth. 1989)]. Because an interest arbitration award under Act 111 may only embrace those issues which the party requesting the arbitration has specifically raised in the notice of arbitration or that are fairly considered as subsumed within those issues, and the FOP failed to raise this issue before the Board, the trial court properly determined that the Board exceeded its jurisdiction and vacated that portion of the Board's award.

850 A.2d at 854 (emphasis added). We note that in the present appeal, the importance of the minimum age and years-of-service eligibility requirements as a subject of collective bargaining is reflected in the provisions of the parties' CBAs, City ordinances amending the pension plan, and, currently, the pending grievance arbitration, in which neither party asserts the application of Ordinance No. 3.

In *Michael G. Lutz Lodge No. 5*, following the expiration of the CBA between the City of Philadelphia (city) and the Michael G. Lutz Lodge No. 5 of the Fraternal Order of Police (Union), the parties proceeded to interest arbitration. Section 14 of the panel's award concerned advance notification and the rate of compensation payable to police officers for court appearances:

> Effective January 1, 2010, officers who do not receive notice at least 48 hours in advance of the time they are directed to appear for a required court appearance, other than a preliminary hearing, scheduled for a date the officer is not scheduled to work, shall be paid a minimum of 4 hours of overtime at a rate of 2.5 times the employee's regular rate.

129 A.3d at 1223.

The panel took the unusual step of retaining jurisdiction to resolve any disputes that arose regarding implementation of its award. Such a dispute did arise when the City of Philadelphia Police Department (Department) declared that if an officer was given at least 48 hours prior notification of a court appearance on a scheduled day off, and the case was continued until the next day, the officer would not be entitled to the overtime. The Union filed grievances, arguing that the Department did not comply with the interest arbitration award. While the grievances were pending, the Union sought an immediate hearing before the interest arbitration panel.

Eleven days before the hearing, the city submitted a proposal seeking a determination that it be permitted to provide officers notice of court appearances electronically, through a telephone number or email. This request marked a departure from prior practice, under which a police officer's platoon commander typically was required to notify the officer in person. An officer who did not comply with such notice could have been subjected to discipline.

The parties disputed whether the interest arbitration panel had jurisdiction or authority to grant the city's request. The matter eventually was resolved by our Supreme Court, which granted allocator to address "the breadth of an interest arbitration panel's authority to address a question which was not bargained over and not directly at issue before the panel in the prior interest arbitration award," over which the panel had retained jurisdiction. *Id.* at 1225. Specifically, the parties disputed whether the *manner* of notification of court appearances was an issue properly before the panel.

The court first explained that

> the threshold question for us is whether this issue implicates any of the four permissible areas of inquiry

14

allowed under narrow *certiorari*. We recently answered that question in [*Department of Corrections v. Pennsylvania State Corrections Officers Association*, 12 A.3d 346, 356 n.15 (Pa. 2011)], wherein we held that "[a]n award pertaining to an issue that was not placed in dispute before the board also reflects an excess of the arbitrators' powers," citing *Appeal of Upper Providence Police*, [526 A.2d 315, 322 n.5 (Pa. 1987)]. As the question of waiver implicates the narrow *certiorari* prong regarding the excess of an arbitrator's powers, we may consider the substance of the underlying issue of whether the arbitration panel exceeded its authority when it considered the proper manner of notification of police officers regarding court appearances under narrow *certiorari* review.

129 A.3d at 1227-28.

After setting forth the relevant law, the court held that "an interest arbitration award under Act 111 may embrace only those issues which the submitting party has specifically raised in the notice of arbitration, or which are reasonably considered as subsumed within those issues." 129 A.3d at 1230. Quoting *Marple Township v. Delaware County F.O.P. Lodge 27*, 660 A.2d 211, 215 (Pa. Cmwlth. 1995), the Supreme Court explained:

> [A]n arbitrator does not have a roving commission to do what he or she believes is necessary to put everything right, to construct a "better agreement." Arbitrators are required to address the issues submitted within the context of the positions of the parties and effectuate the relief requested, not to reform the collective bargaining agreements.

*Michael G. Lutz Lodge No. 5*, 129 A.3d at 1230. Applying those legal principles, the court concluded that the parties neither bargained to impasse over the specific issue of the manner of notification nor raised it before the arbitration panel. Further, whereas the initial interest arbitration award did not address the manner in which

15

notice to officers would be provided, the subsequent award "made drastic changes to the existing and long-standing notification procedure." *Id.* at 1231. The Supreme Court held:

> The manner of notification is not implicit in, nor inherently commingled with, the distinct issue of notice compensation. Indeed, the requirements regarding the timing of notification and increased compensation for court appearances may be achieved without a change to the manner of notification. Thus, we hold that the Panel exceeded its authority in addressing the manner of notification.

*Id.*

Here, the City maintains that the age and length-of-service requirements were raised in its statements of issues in dispute submitted to the panel. However, throughout its argument that its written notice was sufficient, the City omits any reference to the qualifying language set forth in its written statement of the issues, i.e., "in accordance with Section 1.13 of the City of Arnold Police Pension Plan as amended and restatement effective October 14, 1997 [Ordinance No. 6]."

The City focuses its argument on an alleged lack of evidence that Ordinance No. 6 was enacted in compliance with Act 205, implicitly challenging the validity of Ordinance No. 6. Relying on *City of Allentown v. International Association of Fire Fighters Local 302*, 122 A.3d 492 (Pa. Cmwlth. 2015), *rev'd on other grounds*, 157 A.3d 899 (Pa. 2017), and *Municipality of Monroeville v. Monroeville Police Department Wage Committee*, 767 A.2d 596 (Pa. Cmwlth. 2001), the City asserts that the arbitrator had authority to affirm the invalidity of Ordinance No. 6, even if police officers were adversely affected.

However, because the issue of notice required by Act 111 was not implicated in either of these cases, they are not relevant to our analysis. Indeed, while the City argues that the Committee failed to preserve the issue of the validity

16

of Ordinance No. 3, the City fails to identify language in its statement of issues challenging the validity of Ordinance No. 6, the ordinance that the *City* identified in its arbitration request.

In rebuttal to the Committee's assertion that the retroactive modification of pension eligibility requirements was an impairment of contractual rights in violation of Article I, Section 17 of the Pennsylvania Constitution, Pa. Const. art. I, §17, the City maintains: (1) the award did not violate police officers' constitutional rights by retroactively diminishing pension benefits because the award is the result of Act 111 interest arbitration; (2) the award clarified, rather than modified, retirement eligibility requirements; and (3) the clarification was in accordance with Act 205. Again, the City's arguments stray from the essential fact that its statement of the issues in dispute does not mention Act 205 or Ordinance No. 3, but expressly refers to the application of Ordinance No. 6 and does not contest its validity. In light of this deficiency of notice, the award's retroactive change in pension benefit eligibility requirements "was not a change entered into by mutual agreement or by an Act 111 panel." The trial court erred in concluding otherwise.

Following *Michael G. Lutz Lodge No. 5*, *City of Pittsburgh,* and *Lower Yoder Township*, we hold that, by applying the terms of Ordinance No. 3 to resolve the parties' dispute over age and years-of-service pension eligibility requirements, the interest arbitration panel considered an issue that was not submitted to the panel nor reasonably subsumed within the issue presented, which was the normal retirement date for officers *in accordance with Section 1.13 of Ordinance No. 6.* S.R.R. at 164b.

As we did in *City of Pittsburgh* and *Lower Yoder Township*, we again emphasize the importance of the notice provision in Section 4(a) of Act 111, which

17

provides that interest arbitration can be triggered only by a party giving written notice to the other party "containing specifications of the issue or issues in dispute," 43 P.S. §217.4(a). We conclude that the plain language of the issue submitted by the City does not fairly or reasonably embrace the consideration or application of Ordinance No. 3. Moreover, we note that the age and years-of-service pension eligibility requirements is an issue of major importance to the parties, as manifested by the parties' prior conduct, and, therefore, it is an issue that must be *specifically raised* in a written demand for arbitration. *City of Pittsburgh*, 850 A.2d at 854. Consequently, we hold that, by failing to confine its award to the issues in dispute, the panel exceeded its authority[11].

Accordingly, we reverse the trial court's order as it affirms the portion of the arbitration panel's award retroactively modifying the minimum age and years-of-service pension eligibility requirements under Ordinance No. 3. The trial court shall remand this matter to the arbitration panel to consider the disputed issue as submitted by the City, which was confirmation of the normal retirement date for officers prior to January 1, 1988 and since in accordance with Section 1.13 of Ordinance 6.

MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[11] It is well settled that, "when a case raises both constitutional and non-constitutional issues, a court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds." *Ballous v. State Ethics Commission*, 436 A.2d 186, 187 (Pa. 1981.)

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wage and Policy Committee of the : 
City of Arnold Police Department, : 
 : 
 : 
Appellant : 
 : 
v. : No. 47 C.D. 2018
 : 
City of Arnold, Pennsylvania : 

# **O R D E R**

AND NOW, this 9<u>th</u> day of <u>August</u>, 2019, the order of the Westmoreland County Court of Common Pleas (trial court), dated December 6, 2017, is REVERSED in part, and the matter is REMANDED to the trial court with instructions to remand to the arbitration panel for a determination of pension benefit eligibility requirements in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
MICHAEL H. WOJCIK, Judge