626 A.2d 1260

John R. LEE, Matthew Poye, Jr., Wallace J. Szott, Joseph B. Picard, Eugene A. Joseph, George H. Davison, Charles Sweeney, Stephen Nyiri, and Ralph V. Litzenburger, Appellants,

v.

MUNICIPALITY OF BETHEL PARK and The Bethel Park Police Department Wage Policy Committee, Appellees.

Commonwealth Court of Pennsylvania.

Argued March 4, 1993.

Decided June 2, 1993.

Charles P. Nemeth, for appellants.

Victor R. Delle Donne, for appellee Mun. of Bethel Park.

Bryan Campbell, for appellee Bethel Park Police Dept. Wage Policy Committee.

Before DOYLE and KELLEY, JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

John R. Lee, Matthew Poye, Jr., Wallace J. Szott, Joseph B. Picard, Eugene A. Joseph, George H. Davison, Charles Sweeney, Stephen Nyiri, and Ralph Litzenburger (Appellants) appeal an order of the Court of Common Pleas of Allegheny County sustaining the preliminary objections of the Municipality of Bethel Park and the Bethel Park Police Department Wage Policy Committee (Union) and dismissing Appellants' complaint for lack of standing.

The dispute in this case arises from an Act 111 arbitration award and the resulting municipal ordinance concerning the Bethel Park Police Pension Plan (Plan). In 1990, an actuarial study of the Police Pension Plan was conducted and it was determined that the Plan was overfunded. The status of the Plan became an issue in the collective bargaining between Bethel Park and the Union for the 1990 calendar year, and the issue was resolved by a subsequent Act 111 interest arbitration award which reads, in pertinent part, as follows:

> Effective January 1, 1991, the Police Pension Plan shall be amended to provide that the pension for all officers retiring after January 1, 1991, shall be calculated on the basis of sixty (60) per cent of an officer's W-2 wages over the last 36 months of employment. In addition, the pension contributions made by all present members prior to January 1, 1991, shall be refunded to the members with interest. The refund ... shall be made ... as long as the retirement plan remains actuarially sound. In the event it is determined that contributions are necessary to maintain the actuarial soundness of the pension plan, said contributions shall first

be made by police officer members ... before it shall become necessary for contributions by the municipality.

On June 10, 1991, Bethel Park approved an ordinance implementing the refund of contributions to present members of the police department as mandated by the arbitration award.

Appellants are former officers of the Bethel Park Police Department and participants in the Police Pension Plan who are actually receiving pension benefits or whose benefits have vested. They instituted this action by filing a "Complaint in Equity or in the alternative, Appeal from Enactment of Ordinance." The complaint challenged the refund of the contributions and contained two counts. Count I alleged that the arbitration award is void because the refund of contributions violates "Act 600"[1] and various other statutes, and thus requires the borough to perform an illegal act. In this count, Appellants sought as relief an injunction preventing distribution of the refund. Count II alleged that the award violates their equal protection rights and also deprives Appellants of their property without due process of law and further asserts that if refunds are distributed, that Appellants should also be entitled to a refund of their contributions.

Bethel Park and the Union interposed preliminary objections in the nature of a demurrer questioning, *inter alia,* Appellants' standing to challenge either the arbitrator's award or the ordinance implementing its provisions. The common pleas court concluded that because the distribution would in no way affect the benefits Appellants receive under the Plan, Appellants had failed to set forth any direct, immediate and substantial interest affected by the refunding of pension overages and that Appellants thus lacked standing. Accordingly, the preliminary objections were sustained and Appellants' complaint was dismissed. This appeal followed.[2]

1. Act of May 29, 1956, P.L. (1955) 1804, *as amended,* 53 P.S. §§ 767–78.

2. On appeal from an order of a trial court sustaining preliminary objections in the nature of a demurrer, our review is limited to determining whether the trial court abused its discretion or committed

 Appellants' first contention is that they alleged sufficient facts in their complaint to establish that the action complained of would cause immediate and direct harm to their interests and thus, that they possess standing to challenge the distribution.[3] We must thus examine Appellants' complaint, keeping in mind that a preliminary objection in the nature of a demurrer admits all well-pleaded facts as well as any inferences reasonably deducible therefrom. *Cheltenham Township Police Association v. Cheltenham Township*, 152 Pa.Commonwealth Ct. 338, 618 A.2d 1234 (1992).

The requirements of standing are well settled:

In order to have standing to challenge the validity of a governmental action, one must generally have a direct,

an error of law. *Smith and McMaster v. Newtown Borough*, 149 Pa.Commonwealth Ct. 356, 613 A.2d 129 (1992).

3. Appellants do not clearly distinguish between their challenge to the arbitration award and their challenge to the ordinance implementing that award. We note, however, that Appellants are not parties to the collective bargaining agreement which is the subject of the award nor were they parties to the arbitration.

While our research has disclosed no cases discussing the standing of individual employees or former employees to challenge an interest arbitration award under Act 111, under Act 195, the law is clear that, absent a specific provision in the collective bargaining agreement, such individuals lack standing, independent of the bargaining representative, to challenge arbitration awards. *See Fleck v. American Federation of State, County and Municipal Employees*, 106 Pa.Commonwealth Ct. 330, 526 A.2d 834 (1987); *McGrath v. Municipality of Penn Hills*, 64 Pa.Commonwealth Ct. 477, 440 A.2d 1279 (1982); *McCluskey v. Department of Transportation*, 37 Pa.Commonwealth Ct. 598, 391 A.2d 45 (1978).

The concerns underlying the restriction of standing in the Act 195 context, namely maintaining the integrity of the collective bargaining process, are equally present where Act 111 is concerned and thus we would conclude that, absent a specific provision in the collective bargaining agreement, individual employees lack standing to challenge an arbitration award rendered under Act 111. Of course, if present employees lack standing to challenge an award independent of their union, former employees, who are no longer even members of the bargaining unit, must also lack standing.

In the instant case, Appellants have not cited any relevant provision of the collective bargaining agreement granting them a right to challenge arbitration awards nor have they alleged in their complaint that such a provision exists. Accordingly, we would conclude that, as a matter of law, Appellants lack standing to challenge the *arbitration award.*

immediate and substantial interest in the claim he seeks to litigate. *William Penn Parking Garage v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1971). One has such an interest if it is something which the law recognizes and protects and not merely the abstract interest of all citizens in having others comply with the law. *Id.* The plaintiff must show a sufficiently close causal connection between the governmental action he seeks to challenge and some discernible adverse effect on that interest. *Id.*

*Taxpayers, City of Carbondale v. City of Carbondale,* 123 Pa. Commonwealth Ct. 20, 23, 553 A.2d 119, 121 (1989).

■ Appellants maintain that they have satisfied the requirements of standing by alleging that the distribution would violate the Act of May 29, 1956 (Act 600), P.L. (1955) 1804, *as amended,* 53 P.S. §§ 767–778, and the "non-discrimination principles embodied in Section 401(a)(4) of ERISA[4] and/or the Pennsylvania Wage Payment and Collection laws[5]...." Appellants' brief at 14–15. The mere allegation of a statutory violation is, of course, insufficient because, as mentioned above, the interest of Appellants in the litigation must be more than the abstract interest of all citizens in having others comply with the law. *William Penn Parking Garage.*

Appellants next point to paragraphs 24 and 25 of their complaint in which they allege that the distribution of pension contributions would "substantially reduce the assets of the pension fund" and cause an "irretrievable loss of the Fund's assets." These allegations are insufficient because while they aver that the Plan's assets will be reduced as a result of the distribution, they do not allege that that reduction will adversely affect their interests. Appellants only cognizable interest in the Plan is that their benefits either continue or, for those whose right to benefits has vested but who are not yet receiving a pension, that sufficient funds be present for them to receive benefits in the future. We cannot infer from these

4. Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461.

5. Wage Payment and Collection Law, Act of July 14, 1961, P.L. 637, 43 P.S. §§ 260.1–260.12.

164

allegations that Appellants' interest in the continued integrity of the Plan is threatened.

In fact, other allegations in the complaint suggest the opposite conclusion. In paragraph 15 of the complaint, Appellants allege that the Pension Plan was overfunded as of 1990. Further, Appellants acknowledge in the complaint that the distribution is to be made only so long as the Plan remains actuarially sound. These further allegations tend to belie and contradict Appellants' contention that the distribution would reduce the assets of the Plan to the point where their pension benefits would be threatened.

Appellants cite to cases in which police officers challenged arbitration awards which diminished or adversely affected their pension rights. *See Police Pension Fund Association Board v. Hess,* 127 Pa.Commonwealth Ct. 498, 562 A.2d 391 (1989), *petition for allowance of appeal denied,* 524 Pa. 614, 569 A.2d 1371 (1989); *Police Officers of the Borough of Hatboro v. Borough of Hatboro,* 126 Pa.Commonwealth Ct. 247, 559 A.2d 113 (1989). Aside from the fact that neither of these cases concerned the issue of standing, they are readily distinguishable because in both *Hatboro* and *Hess* the arbitration awards ordered the reduction or diminishment of pension rights. There is no question that public retirement benefits cannot be subsequently reduced or diminished except by mutual consent of the parties, *Hatboro,* but in the instant case Appellants have failed to allege any diminishment of their rights. Appellants also cite *Dombrowski v. City of Philadelphia,* 431 Pa. 199, 245 A.2d 238 (1958), but again, that case involved a situation where there was an actual and immediate impairment of pension rights, something Appellants have failed to plead here.

The simple fact of the matter is that Appellants have failed to plead any entitlement to share in the distribution of pension contributions and have failed to allege any adverse impact the distribution of those contributions will have on the soundness of the Plan, and thus citation to cases prohibiting the subsequent impairment of pension rights is unavailing.

Appellants' next contention is that, even if they have not pled facts meeting the traditional standing criteria, they do have standing under the narrow exception enunciated by our Supreme Court in *Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979). This exception provides that:

[a] taxpayer who does not allege facts showing that he has . . . an [immediate and direct interest as explained in *William Penn Parking* ] . . . may still have standing if he is able to show that the following special circumstances exist:

(1) the governmental action the taxpayer seeks to challenge would otherwise go unchallenged;

(2) those directly and immediately affected by the governmental action the taxpayer seeks to challenge are beneficially affected and not inclined to challenge it;

(3) judicial relief is appropriate;

(4) redress through other channels is unavailable; and

(5) no other persons are better situated to assert the claim.

*City of Carbondale,* 123 Pa.Commonwealth Ct. at 24, 553 A.2d at 121.

We note first that Appellants have failed to allege any facts in their complaint supporting inclusion within this narrow exception and there is no other indication that this action was brought as what is commonly known as a "taxpayer suit." Further, even a cursory review of the facts present indicates that the exception is not applicable.

There is nothing to suggest that the challenged action would go unchallenged if Appellants are not allowed to proceed. The Union and present police officers have just as much interest in the continued viability of the Plan as do Appellants, and thus it is conceivable that they would have some incentive to challenge the award if they thought it threatened their pension benefits. While the present members of the police force would certainly benefit from the distribution, this does not mean that they would not be inclined to challenge it if they believed that it would nevertheless threaten their future benefits. Finally, it is clear that the Union and present police

officers, as parties to the arbitration and collective bargaining agreement, are certainly better situated to challenge the award.

█ Finally, Appellants contend that their standing is predicated on constitutional considerations, namely that distribution of funds to present police officers alone deprives Appellants of property without due process of law and violates principles of equal protection. Again, these arguments are of no avail because Appellants have not pled any adverse affect or diminishment of their rights. Without addressing the legality of the distribution mandated by the award, we note that all that Appellants are entitled to from the Plan are their pension benefits; they have no right, nor have they pled any right, to a return of their contributions. As long as Appellants continue to receive their pension benefits and as long as the Plan is actuarially sound, Appellants are not aggrieved. The fact that other members of the Plan might be getting a "better deal" is irrelevant.

Accordingly, the order of the common pleas court sustaining the preliminary objections and dismissing Appellants' complaint is affirmed.

## ORDER

NOW, June 2, 1993, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

KELLEY, J., dissents.