TOWNSHIP OF HELLAM

v.

HELLAM TOWNSHIP POLICE OFFI-
CERS' ASSOCIATION and James
J. Agnew, Appellants.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 12, 1998.

Decided Dec. 4, 1998.

Eric C. Stoltenberg, Harrisburg, for appellants.

William J. Flannery, Harrisburg, for appellee.

Before DOYLE, J., SMITH, J., and NARICK, Senior Judge.

1. Act of June 15, 1951, P.L. 586, as amended, 53

DOYLE, Judge.

James J. Agnew, a police officer for Hellam Township, appeals from an order of the Court of Common Pleas of York County, vacating an award of an arbitrator which had ordered him reinstated to the police force but without back pay or seniority. The appeal presents the issue of whether a Court of Common Pleas or an arbitrator has the authority to determine the issue of jurisdiction over the parties who are engaged in the arbitration process.

Agnew began working as a police officer for Hellam Township (Township) in January of 1990. As a member of the Township's Police Department, Agnew was a member of the bargaining unit represented exclusively by the Hellam Township Police Officers' Association (Association). Accordingly, although Agnew withdrew from the Association on March 30, 1992, Agnew's employment was structured in part by a Collective Bargaining Agreement (CBA) negotiated between the Township and the Association.

As part of his duties, Agnew was required to complete investigative reports and other paperwork but he repeatedly failed to complete these reports in a timely manner. On September 29, 1995, after several warnings from the Chief of Police, Michael Dupler, seven charges were prepared against Agnew as the result of his failure to complete his reports in a timely manner. The statement of charges indicated that Agnew was suspended for three days and advised him of his right to a hearing to answer the charges under the Police Tenure Act.[1] On October 2, 1995, Chief Dupler confronted Agnew and presented him with the statement of charges; he was then suspended for three days. Agnew responded that his reports had been completed, but a subsequent investigation revealed that this was not true, and the reports had not been completed.

Additionally, on October 2, 1995, upon receiving notice that he was being suspended, Agnew refused to leave the Township building and told another officer that he needed to stay away from Chief Dupler, or he would kill the chief. As a result of this conduct,

P.S. §§811–815.

Agnew was suspended for ten days, and, on October 6, 1995, Dupler prepared a second statement of charges, charging Agnew with general insubordination and conduct unbecoming an officer. Additionally, the statement of charges advised Agnew that he had a right to answer the charges and demand a hearing under the Police Tenure Act.

In addition to the above-related charges, Agnew was accused of two other violations of Township policy. On July 8, 1995, Agnew had engaged in a high-speed pursuit of an individual wanted for a summary traffic offense. Pursuant to Township policy, officers are prohibited from engaging in high-speed pursuit of summary offenders. Agnew was further accused of having drawn his service revolver, cocking it and aiming it at three licensed dove hunters and their children, in violation of the Township's policy concerning the use of deadly force. Subsequent investigations of both charges determined that Agnew violated the policies concerning high-speed pursuit and the use of deadly force.

As the result of Agnew's total conduct, by a memorandum dated October 5, 1995, Chief Dupler recommended to the Township's Board of Supervisors that Agnew be terminated, a course of action which the Board of Supervisors took on October 6, 1995. In doing so, the Board informed Agnew of his right to answer the charges and demand a hearing under the Police Tenure Act. Agnew did not exercise his rights under the Police Tenure Act, but rather, on October 14, 1995, he utilized the grievance process contained in the CBA, which provided for a three-step grievance process to resolve disputes as follows:

Whenever an officer, or the Association, desires to contest or otherwise challenge the interpretation and/or implementation of any provision of this agreement, he/it shall proceed as follows:

Step 1: The Association by a representative shall present the grievance in writing, to the Chief of Police, within fifteen (15) days of its occurrence, or knowledge of its occurrence whichever is greater.

The Chief of police shall report his decision, in writing, to the Association within ten (10) days of its presentation.

Step 2: In the event that the grievance is not settled at Step 1, the appeal must be presented, in writing, to the Board of Supervisors of the Township and will be heard in Executive Session at the next regularly scheduled Board meeting following the date on which the grievance was presented by the Association representative. The Board of Supervisors shall respond, in writing, to the Association within ten (10) days after the Executive Session.

Step 3: In the event that the grievance is not settled at Step 2, **the Association** may serve the Board of Supervisors of the Township with written notice declaring an intention to proceed to final and binding arbitration of the dispute. Such notice must be given within ten (10) days after the response of Step 2 was due.

**The Association** shall have the absolute right to proceed to a final resolution of the dispute through binding arbitration, once the above step 3 notice has been served. The Arbitrator for Step 3 shall be selected by the parties, utilizing the same process by which an Arbitrator for an Act 111 arbitration [is] selected, except there shall only be one (1) arbitrator selected either jointly by the parties, or from a list supplied by the American Arbitration Association.

The arbitrator so selected shall neither add to, subtract from, nor modify the terms of this Agreement or any other prior contracts or awards. The arbitrator shall confine himself to the precise issue(s) submitted to him for decision, and shall have no authority to determine any issue(s) not so submitted.

(1994–1996 Township of Hellam Police Contract, Article 25.) (Emphasis added.) On October 14, 1995, Agnew filed three grievances with Chief Dupler alleging that the disciplinary action taken against him was in retaliation for a lawsuit[2] that he filed against the Chief and the Township. On October 23,

---

2. This suit was filed in this Court's original jurisdiction on February 11, 1994. On March 20, 1996, the Honorable Silvestri Silvestri issued an order granting the Township's motion for a compulsory non-suit, thus dismissing the suit.

1995, the Chief denied the grievance. Pursuant to Step 2 of the grievance procedure, **the Association** was then required to file a written appeal with the Board of Supervisors to continue the grievance process.

However, on November 7, 1995, the members of the Association voted unanimously *not* to support Agnew financially in his bid to challenge the charges filed against him and to be reinstated to the police force. On November 9, 1995, by a written decision, the Board of Supervisors initially noted that neither the Association nor Agnew had filed a *written* appeal as required by Step 2 of the CBA, but rather a member of the Association had contacted the Township Manager and informed him that Agnew wished to appeal Chief Dupler's denial of his grievance. The Board of Supervisors further concluded as follows:

2. Notwithstanding the fact that no formal appeal from the denial of [Agnew's] grievances at the Step I level by the Township Chief of Police has been filed in writing with the Township, and without waiving any rights that the Township may have as a result of [the] failure to follow the [CBA] procedure, ... the Board of Supervisors of the Township did meet in Executive Session following its regular meeting on November 2, 1995 to consider [Agnew's] grievance.

3. That, after reviewing the information supplied to the Board by its Police Chief, you are hereby advised that the grievances filed by [Agnew] from his suspensions and termination of employment, and the subsequent appeal of the initial denial of said grievances by the Chief of Police (if, in fact, such appeal has occurred) is denied by the Board of Supervisors of the Township.

(Township's Denial of Grievance Appeal at 1–2.)

On November 12, 1995, Agnew, *through his personal counsel*, demanded that the grievance be submitted to final and binding arbitration pursuant to Step 3 of the CBA;

the Township, however, on December 6, 1995, informed Agnew that his request for arbitration was improper because only the Association could request arbitration under the CBA, and the Association did not do so. The Township, however, agreed to process Agnew's request for arbitration, reserving the right to challenge Agnew's standing, as well as the arbitrator's jurisdiction to arbitrate the grievance, before the arbitrator.

Following a July 2, 1997 hearing before an arbitrator, the arbitrator determined that he could consider the merits of the grievance even though it was Agnew, rather than the Association, who requested arbitration. Specifically, the arbitrator concluded that "[w]hile the Association did not intend to finance the grievance arbitration[,] the Association took no outward steps to indicate that the grievant was acting without its approval." As to the merits of Agnew's grievance, the arbitrator concluded that Agnew had violated the Township police department's policies, but that such violations were mitigated by the fact that the Township did not provide Agnew with due process, because he was not permitted to answer the charges against him. Accordingly, the arbitrator ordered Agnew reinstated without back pay or seniority, noting that any future violation of department policy would result in Agnew's termination. The Township appealed to the Court of Common Pleas of York County.

On appeal, Common Pleas, although noting that its standard of review of the decision was narrow, reversed the arbitrator's decision, concluding that both Agnew and the Association failed to exhaust its administrative remedies because neither party presented an appeal to the Township Board of Supervisors as required by Step 2 of the grievance process. Also, Common Pleas concluded that the arbitrator did not have jurisdiction to hear the grievance because only the Association could request arbitration, which it declined to do.[3] This appeal by Agnew ensued.

---

**3.** Common Pleas did not reach the Township's arguments concerning the merits of the arbitra-tion award.

On appeal,[4] Agnew [5] presents a single issue for our review: Whether Common Pleas erred when it vacated the arbitrator's decision for lack of jurisdiction. Implicit in this issue, of course, is the related issue of which tribunal, *i.e.*, the court or an arbitrator, has the authority to determine whether proper jurisdiction exists over the parties and issues presented to an arbitrator.

In *Marple Township v. Delaware County F.O.P. Lodge 27*, 660 A.2d 211 (Pa.Cmwlth. 1995), we examined the issue of an arbitrator's jurisdiction. In *Marple Township*, a dispute arose between the County and the F.O.P. concerning the assignment of patrol officers to the Detective Division. Pursuant to the Collective Bargaining Agreement, the dispute proceeded to arbitration, and the parties submitted eight issues encompassing the dispute. Although the arbitrator decided the issues presented to him, he proceeded to decide several other issues as well, which, in his opinion, although not raised by the parties, needed to be addressed. Common Pleas affirmed the decision, but this Court reversed, noting that

> [n]o matter what scope of review is used, an arbitrator does not have a roving commission to do what he or she believes is necessary to put everything right, to construct a "better agreement." Arbitrators are required to address the issues submitted within the context of the positions of the parties and effectuate the relief requested, not to reform the collective bargaining agreements.

*Id.* at 215; *see also Fraternal Order of Police Haas Memorial Lodge No. 7 v. City of Erie*, 668 A.2d 241 (Pa.Cmwlth.1995) *(Haas)*.

Based on the holdings of *Haas* and *Marple Township*, Agnew argues that the arbitrator was the proper authority to determine jurisdiction because the parties placed the issue of jurisdiction before him, and, therefore, Common Pleas exceeded *its* scope of review by inquiring into that issue.[6] We disagree. If we were to accept Agnew's argument, an arbitrator's decision would be self-proving as to jurisdiction, *i.e.*, because the arbitrator decided an issue presented to him by the parties demonstrates that he had jurisdiction over the parties to do so. Furthermore, if a reviewing court has the power to inquire into whether an arbitrator *exceeded* his jurisdiction as to a particular issue, a power which Agnew concedes a reviewing court does possess, it logically follows, then, that a reviewing court must also be able to examine whether the arbitrator had jurisdiction over the parties, and, therefore, whether **any** issues were properly before the arbitrator. This concept was recognized in *Betancourt* where our Supreme Court stated that one of the areas into which a reviewing court may inquire in arbitration awards issued pursuant to Act 111 is the jurisdiction of the arbitrator.

Moreover, under Agnew's argument, the only instance in which an arbitrator would not possess jurisdiction over a dispute would be when the arbitrator himself determines that he does not have jurisdiction or when that issue was not presented to him by the parties, *i.e.*, addresses an issue not placed before him by the parties, regardless of whether the parties had a contractual right to arbitration. The net result of this ap-

---

4. When reviewing a grievance arbitration award issued under the authority of the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§217.1—.10 (Act 111), our scope of review is limited to questions concerning: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995).

5. Although listed as a party in the caption of this case, the Association formally withdrew as a party in the appeal to this Court on May 24, 1998.

6. Agnew's argument appears to mix the issue of arbitrability of a substantive issue with that of jurisdiction. It is well-settled that an arbitrator has the authority to make an initial determination as to whether a particular issue is subject to arbitration. *Pennsylvania Labor Relations Board v. Bald Eagle Area School District*, 499 Pa. 62, 451 A.2d 671 (1982). However, this determination is not tantamount to deciding whether or not the *parties* before the arbitrator have a contractual right to arbitration, *i.e.*, whether or not the parties have the authority to enforce the provisions of a CBA at issue.

proach would be the insulation from appellate review of an arbitrator's decision concerning his *jurisdiction,* and, as noted above, such a holding would be in conflict with our Supreme Court's decision in *Betancourt.* Accordingly, we hold that an appellate court, reviewing an Act 111 arbitration award under the narrow certiorari scope of review, may inquire into whether the parties had a contractual right to arbitration, *i.e.,* whether the arbitrator possessed jurisdiction over the parties to hear a grievance.

█ Next, we turn to the decision of Common Pleas that the arbitrator did not have jurisdiction to hear the grievance because the Association did not demand arbitration.

█ It is well settled that, absent a specific provision in a CBA, an individual employee has no standing to request arbitration. *Warwick v. Pennsylvania Labor Relations Board,* 671 A.2d 1199 (Pa.Cmwlth.1996), *petition for allowance of appeal denied,* 545 Pa. 666, 681 A.2d 180 (1996). The rationale for not permitting an individual himself to process a grievance to arbitration has been explained as follows:

> To view this type of agreement otherwise would lead to chaos and a breakdown in the entire scheme of collective bargaining for which the parties have provided and contracted. Instead of being able to rely on the disposition of employee grievances through the established machinery, the [Employer] would face the constant threat of attempted individual enforcement through litigation. Union responsibility would be diminished and all parties would suffer. For these reasons, most, if not all, Union-management agreements of any magnitude in force throughout the Commonwealth are similarly drafted, with an eye toward reposing enforcement responsibility in the labor organization concerned.

*Falsetti v. Local Union No.2026, United Mine Workers of America,* 400 Pa. 145, 170, 161 A.2d 882, 894 (1960). In addition, this Court has noted an additional legally distinct basis for denying the individual the right to process a grievance to arbitration: the fact that, unless the CBA provides otherwise, the individual employee is not a party to the CBA and, thus, cannot enforce the rights granted under the CBA. *See Lee v. Municipality of Bethel Park,* 156 Pa.Cmwlth. 158, 626 A.2d 1260 (Pa.Cmwlth.1993).

In the present case, the language of the CBA clearly indicates that, at Step 3 of the grievance process, it is **only** the Association which may submit a request for arbitration to the Board of Supervisors, and it is **only** the Association that has the absolute right to arbitration. No mention is made of an individual employee's ability or right to demand arbitration of a grievance. In his decision, the arbitrator concluded that the Association itself did not request arbitration as required by the CBA. The arbitrator nonetheless concluded that he had jurisdiction because the Association did not indicate that Agnew was acting without its approval. The Association's action in this respect, *i.e.,* not taking any action to stop Agnew, however, is not tantamount to the Association demanding arbitration as is required under the terms of the CBA. Moreover, we note that Agnew submitted the only request for arbitration in a letter sent on his personal letterhead. This letter gave no indication that he was acting on behalf of the Association. Similarly, in his defense of the arbitrator's award at Common Pleas, it was Agnew, not the Association, that filed a brief defending the award. Therefore, because it was Agnew, and not the Association, that demanded arbitration, and Agnew had no right under the CBA to make such a demand as an individual employee, the arbitrator had no jurisdiction over any of the issues involved in this case.

Order affirmed.

### ORDER

NOW, December 4, 1998, the order of the Court of Common Pleas of York County in the above-captioned matter is hereby affirmed.