# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Kenneth Zipovsky, : | |
| Appellant : | |
| : | |
| v. : | No. 1063 C.D. 2023 |
| : | Argued: September 9, 2024 |
| : | |
| City of Hazleton Aggregated Pension : | |
| Board, City of Hazleton, and Mayor : | |
| Jeff Cusat : | |

**BEFORE:** **HONORABLE RENÉE COHN JUBELIRER,** President Judge
**HONORABLE PATRICIA A. McCULLOUGH,** Judge
**HONORABLE ANNE E. COVEY,** Judge

**OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**          **FILED: October 8, 2024**

Kenneth Zipovsky (Appellant) appeals from an August 21, 2023 Order of the Court of Common Pleas of Luzerne County (common pleas), which granted judgment in favor of the City of Hazleton Aggregated Pension Board (Board), the City of Hazleton (City), and Mayor Jeff Cusat (Mayor) (collectively, Appellees). Appellant had filed a Petition for Review (Petition) with common pleas seeking review of the Board's response to his letter requesting recalculation of his pension benefits. Appellant argues common pleas erred in entering judgment for Appellees because contrary to common pleas' conclusion, his Petition sought review of the Board's response, not an arbitrator's related decision involving a grievance brought by the bargaining unit, the Petition was timely filed, the arbitrator's decision did not bar common pleas from reaching the merits of Appellant's Petition, and Appellant was denied due process. Upon careful review and consideration, we affirm.

## I.    BACKGROUND[1]

Appellant was employed by the City as a police officer since 1993.  (Common Pleas' Findings of Fact (FOF) ¶ 5.)[2]  The police are represented by the Fraternal Order of Police, Power City Lodge No. 18 (Union), which negotiated a collective bargaining agreement (CBA) with the City.  (*Id.* ¶¶ 6, 9.)  The CBA sets forth three different pension options for police depending upon their date of hire – Plan A, Plan B, and Plan C – each with a different calculation method, and each of which was incorporated into the pension plan via a City ordinance.  (*Id.* ¶¶ 10-11, 15-18; *see also* Ex. 1,[3] Reproduced Record (R.R.) at 383a-444a;[4] Ex. 3, R.R. at 453a-60a.)  Appellant was the only remaining Plan A participant who had not retired as of December 31, 2017.  (FOF ¶¶ 12, 19.)  Appellant requested the Board calculate his pension benefit in late 2017, and the Board did.  (*Id.* ¶¶ 21, 23-24; *see also* Ex. 4, R.R. at 462a; Ex. 5, R.R. at 464a.)  On January 15, 2018, Appellant advised the Board and the police chief in writing that he was retiring effective at the end of his shift the next day.  (FOF ¶ 25; *see also* Ex. 6, R.R. at 466a-67a.)  In his retirement letter, Appellant advised of which calculation method he chose and stated if a lesser amount was paid, he would accept it without prejudice to pursue the higher amount.

---

[1] Based largely upon the parties' stipulation, common pleas found as follows.

[2] A copy of common pleas' Order and accompanying Findings of Fact and Conclusions of Law are in the Reproduced Record at pages 369a through 381a.

[3] Many of the exhibits appear in the Reproduced Record twice, once as part of the parties' stipulation and again as an exhibit to common pleas' Findings of Fact and Conclusions of Law. While the exhibit numbering is the same in some situations, there is some discrepancy between the numbering of common pleas' exhibits and the stipulation's exhibits. For instance, the Board's calculations of Appellant's pension benefits are exhibits 5 and 6, respectively, to the parties' stipulation but are exhibits 4 and 5 of common pleas' Findings of Fact and Conclusions of Law. We will follow the numbering of the exhibits appended to common pleas' Findings of Fact and Conclusions of Law to avoid any confusion with the exhibits referenced therein.

[4] The portion of the CBA dealing with pension benefits begins at page 421a of the Reproduced Record.

(FOF ¶¶ 25-26; Ex. 6, R.R. at 466a.)  Appellant began receiving his pension on February 1, 2018.  (FOF ¶ 28.)

On February 23, 2018, the Union filed a class action grievance against the City, alleging it was violating the terms of the CBA by improperly calculating and paying pension benefits for Appellant and certain Plan C participants who retired.[5] (*Id.* ¶¶ 29, 40; *see also* Ex. 7, R.R. at 469a-70a.)  The grievance was heard by an arbitrator who issued a Decision and Award (Award) on January 17, 2019, determining that the grievance, as it pertained to Appellant, was untimely because it was filed outside the 30-day timeframe set forth in the CBA.  (FOF ¶¶ 32-33, 45(e)-(f); *see also* Ex. 8, R.R. at 472a-83a.)  Accordingly, Appellant filed his own appeal with the Board on February 15, 2019.  (FOF ¶¶ 34-35; *see also* Ex. 9, R.R. at 485a.) The same day, Appellant received a letter response from the Board's solicitor, attached to which was a letter from the City's labor counsel, effectively denying the appeal citing the recent Award.  (FOF ¶ 37; Ex. 10, R.R. at 487a.)  Appellant thereafter filed his Petition with common pleas on March 15, 2019.  (FOF ¶ 39.)[6]

Based upon a stipulated record and the briefs and oral argument of the parties, common pleas granted judgment in favor of Appellees.  Common pleas found the CBA contained a provision that required any disputes between members and the City to be resolved through arbitration.  (*Id.* ¶¶ 42-43.)  Common pleas further found the CBA provided that a member, a Union representative, or the Union itself could initiate a grievance with the police chief within 30 days of its occurrence.  (*Id.* ¶ 44.)

Based upon its findings, and citing the narrow scope of review for arbitration decisions, common pleas concluded that because "[t]he arbitrator found that as [it]

---

[5] Counsel who represents Appellant in this appeal also represented the Union at the arbitration.

[6] Appellees filed a Supplemental Reproduced Record that contains a copy of the Petition.

pertains to [Appellant, common pleas] does not have jurisdiction due to the untimely filing of a grievance and in accordance with the [a]rbitrator's findings." (Common Pleas' Conclusions of Law (COL) ¶¶ 1-4.) Common pleas further concluded that the Petition should have been filed within 30 days of the Award but was filed nearly two months later, therefore depriving common pleas of jurisdiction. (*Id.* ¶¶ 5-6.) Common pleas explained that, consistent with *City of Arnold v. Wage Policy Committee of the City of Arnold Police Department*, 171 A.3d 744 (Pa. 2017), Appellant's redress was through arbitration based on the Policemen and Firemen Collective Bargaining Act, commonly referred to as Act 111,[7] the Third Class City Code,[8] the City's ordinances, and the CBA. (COL ¶¶ 7-9.) Common pleas concluded the cases relied upon by Appellant, *Sheppleman v. City of Chester Aggregated Pension Fund*, 271 A.3d 938 (Pa. Cmwlth. 2021), *appeal denied*, (Pa., No. 43 MAL 2022, filed July 18, 2022), and *Chudd v. City of Philadelphia*, 455 A.2d 1259 (Pa. Cmwlth. 1983), were distinguishable.[9] (COL ¶ 10.) Accordingly, common pleas dismissed the Petition. (COL ¶ 11.)

---

[7] Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. §§ 217.1-217.12.

[8] 11 Pa.C.S. §§ 10101-14702, *as amended*.

[9] In *Chudd*, a court of common pleas dismissed a petition for review filed by a municipal retiree's estate challenging the calculation of the retiree's service-connected disability pension on the basis it was untimely. 455 A.2d at 1260. The retiree was awarded retroactive benefits in December 1978. *Id.* at 1260-61. The retiree wrote the local pension and retirement board in November 1979, claiming his pension was miscalculated based upon a retroactive salary increase that would have predated his retirement. *Id.* at 1261. After not receiving a response, the retiree filed a petition for review in the local court of common pleas in November 1980, but the court of common pleas dismissed it as untimely, claiming it should have been filed at the time benefits were first awarded in December 1978. *Id.* We held there was no record evidence indicating the retiree was aware of the retroactive salary increase at that time, and, as a result, the retiree's appeal period should not begin to run from that date. *Id.* We further held there was no adjudication by the local pension and retirement board as it never responded to the retiree's request. *Id.* at 1262. We stated the municipality, under the express terms of its ordinance, had "a clear duty at least to decide an adjustment request," which it did not do, and thus the local court of common pleas should **(Footnote continued on next page…)**

4

Appellant then filed a notice of appeal, seeking review of common pleas' Order by this Court. After Appellant filed a concise statement of errors complained of on appeal, common pleas issued a "Supplemental Opinion" pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a) (Suppl. Op.), further explaining its rationale.[10] First, common pleas explained that "the only appropriate avenue for dealing with disputes was through the CBA." (Suppl. Op. at 3.) Even if the Court were to conclude the appeal should proceed through the Local Agency Law, 2 Pa.C.S. §§ 551-555, 751-754, common pleas stated the Petition was still untimely as the Board calculated the pension benefits in January 2018, and Petitioner started receiving them in February 2018, yet did not challenge the calculation until February 2019, which was outside the 30-day window. (*Id.*) Second, common pleas stated that, contrary to Appellant's assertions, it did not apply

---

have treated his complaint as one sounding in mandamus. *Id.* Accordingly, we vacated the order and remanded the matter for an adjudication. *Id.* at 1263. Common pleas concluded *Chudd* was distinguishable because, although it involved "an appeal of a local agency['s] lack of adjudication, [] that issue d[id] not apply to [this] case in that the CBA in th[is] [] case is the vehicle for determining all disputes." (COL ¶ 10.)

In *Sheppleman*, a city pension fund appealed from a court of common pleas order directing it to recalculate a service-connected disability pension of an officer. 271 A.3d at 942. The city pension fund argued, among other things, that the officer's appeal was untimely because he was on notice of the calculation of his service-connected disability pension in July 2014 but did not file a complaint with the court of common pleas until October 2016. *Id.* at 960. Because the officer was never afforded an opportunity to be heard, as required by Section 553 of the Local Agency Law, 2 Pa.C.S. § 553, and *Chudd*, we determined the July 2014 calculation was not an adjudication that would have triggered the 30-day appeal period. *Id.* at 960-61. As common pleas noted in its Conclusions of Law, the parties in *Sheppleman* **stipulated** to the issue being sent to the local agency for decision and being governed by the Local Agency Law. (COL ¶ 10.) *See also Sheppleman*, 271 A.3d at 944. Further, "[t]o the extent that it stands for the proposition that the [p]laintiff in that case did not have the opportunity to have a hearing before the [p]ension [b]oard so there was no true adjudication and therefore no need for an appeal within [30] days," common pleas stated, "it was not relevant to [its] inquiry." (COL ¶ 10.)

[10] A copy of the Supplemental Opinion is in the Reproduced Record at pages 491a through 494a.

5

collateral estoppel to Appellant's claims. (*Id.*) Common pleas relied upon its initial decision for the remaining issues. (*Id.* at 4.)

## II. PARTIES' ARGUMENTS

Appellant raises numerous issues on appeal, the essence of which is that common pleas erred in viewing his Petition as one challenging the Award, which Appellant claims he would not have had standing to bring, when Appellant was actually appealing the Board's denial of his appeal related to its calculation of his pension benefits. Appellant asserts this error was compounded by common pleas concluding the Petition was untimely since it was filed more than 30 days after the Award. Appellant maintains under the Local Agency Law, he has the right to seek review of the Board's determination. While Appellant acknowledges he received a calculation of his pension amount before retiring, it did not provide any means to appeal if he disagreed with it. Thus, he asserts he acted reasonably in waiting for the Union's grievance with the City to play out. According to Appellant, due process requires that he be provided with an opportunity to be heard, which was not accomplished in arbitration, to which he was not a party, or before common pleas, which misunderstood the basis of his Petition, thereby precluding his arguments from being heard.

Appellant further argues that to the extent the arbitrator concluded he lacked jurisdiction over the grievance, at least to the extent it involved Appellant, this determination did not divest common pleas of jurisdiction as it concluded; rather, the Petition was a timely appeal of the Board's decision. Moreover, Appellant argues collateral estoppel and/or res judicata principles based on the Award do not apply. Appellant posits there is no identity of the parties since the only parties to the grievance arbitration were the City and Union. Furthermore, Appellant asserts there

6

was never a determination on the merits of whether Appellant's pension was correctly calculated as a Plan A participant because the arbitrator concluded that portion of the grievance was untimely; to the extent the arbitrator did address pension calculations, it only was in relation to Plan C participants. Because Appellant has never had an opportunity to be heard on the issue of his pension calculation, he maintains this matter, "at the very least," should be remanded. (Appellant's Brief at 37.) However, because he believes the Court has the authority to decide it de novo, he makes several other arguments as to why the Board's calculation was incorrect and should be reversed.

The City and Board respond that common pleas correctly determined that because the pension benefit is incorporated into the CBA, it is an arbitrable issue consistent with *City of Arnold*. Even if the appeal is proper under the Local Agency Law, they argue it was still untimely as it was not brought within 30 days. The City and Board also assert res judicata does apply to this situation as the grievance underlying the Award was filed by the Union on Appellant's behalf. Further, they argue that Appellant never appealed the arbitrator's conclusion that he lacked jurisdiction due to the grievance being untimely filed. Finally, the City and Board argue the calculation of Appellant's pension benefits was proper. Accordingly, they request that the Court affirm common pleas' Order.

## III. DISCUSSION

We begin with Appellant's assertion that the Local Agency Law applies because this is an appeal of a decision from the Board, not an appeal of an arbitration award, as common pleas appeared to treat it. Section 752 of the Local Agency Law provides "[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the

7

court vested with jurisdiction of such appeals or pursuant to Title 42 (relating to judiciary and judicial procedure)." 2 Pa.C.S. § 752. The term "adjudication" is defined as

> [a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101. We have held that a calculation of a pension benefit is an adjudication under the Local Agency Law. *See Sheppleman*, 271 A.3d at 960. Pursuant to Section 5571(b) of the Judicial Code, an appeal from a local agency adjudication must be filed within 30 days. 42 Pa.C.S. § 5571(b).

A threshold issue in this matter is whether the Local Agency Law is applicable to Appellant's Petition. Here, Appellant filed the Petition seeking to challenge what was effectively a denial by the Board. Thus, it was not an untimely appeal from the Award, as common pleas perceived it, precluding it from exercising jurisdiction over the Petition. However, common pleas also concluded it lacked jurisdiction for another reason – namely, that the dispute could only be resolved through the dispute resolution process set forth in the CBA.

The CBA provides that "[g]rievances shall include any and all disputes between a member(s) and . . . City . . . , including matters involving interpretation of this agreement, all matters of discipline and all matters involving the [act commonly known as] Heart and Lung Act.[11]" (CBA § 41.1.1, R.R. at 438a.) It further provides

---

[11] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-638.

8

that to initiate the first step of the grievance process, "[t]he member, either alone or accomplished by a representative of the bargaining unit or the bargaining unit itself, shall present the grievance in writing to the Chief of Police within thirty (30) days of its occurrence or knowledge of its occurrence." (CBA § 41.1.2, R.R. at 438a.) Step 2 of the grievance procedure also provides that a "member, or the bargaining unit representative," may appeal to the mayor. (CBA § 41.1.3, R.R. at 438a.) Step 3 allows the "bargaining unit representative" to request arbitration. (CBA § 41.1.4, R.R. at 438a.)

Based on this language, common pleas reasoned that, under *City of Arnold*, the issue of Appellant's pension calculation fell exclusively within the arbitrator's jurisdiction. (COL ¶¶ 7-9; *see also* Suppl. Op. at 3.) In *City of Arnold*, the Supreme Court was faced with the issue of whether an arbitrator had subject matter jurisdiction to decide a dispute between a union and municipality related to a surviving spouse's pension benefit, which was statutorily provided and incorporated into the parties' CBA. 171 A.3d at 745. The dispute was originally decided in arbitration pursuant to the parties' CBA, but on appeal, the municipality challenged the arbitrator's jurisdiction. *Id.* at 748. On appeal to this Court, we held the arbitrator lacked jurisdiction because the widow's exclusive remedy was via the Local Agency Law since it involved a decision of a local pension board. On appeal to the Supreme Court, it held the matter was arbitrable under Act 111 because the benefit was incorporated into the CBA. *Id.* at 745. The Supreme Court explained that pursuant to article III, section 31 of the Pennsylvania Constitution, PA. CONST. art. III, § 31,[12] the General Assembly enacted Act 111, which provides in relevant

---

[12] Article III, section 31 provides, in relevant part, that

**(Footnote continued on next page…)**

part that police "have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with" Act 111. *City of Arnold*, 171 A.3d at 749 (quoting Section 1 of Act 111, 43 P.S. § 217.1). The Supreme Court further explained that Act 111 also provides that "disputes may be resolved by arbitration." *Id.* The Supreme Court noted that the municipality enacted an ordinance providing a pension death benefit, which is also provided for by the Third Class City Code, and the parties' CBA specifically incorporated that ordinance and stated that "any dispute" was subject to the grievance process. *Id.* at 750-52. Based upon this, the Supreme Court concluded the arbitrator had subject matter jurisdiction over the dispute. *Id.* at 754. To the extent this Court held the dispute was not between the municipality and employee, which would be subject to the CBA, but rather involved a dispute with the widow, the Supreme Court stated we

> did not account for the fact that the survivor benefit was incorporated into the CBA. This is a significant omission because . . . the pension benefit was a specific term or condition of employment arising from [her husband]'s employment as a [c]ity police officer, the benefit was

---

the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings.

PA. CONST. art. III, § 31.

incorporated into the parties' CBA, and the parties agreed to submit any disputes arising under the CBA to mandatory grievance arbitration. Further, as a police officer necessarily must be deceased for the officer's surviving spouse or children to receive a survivor pension benefit, that survivor is the only party remaining to dispute the [c]ity's administration of that benefit.

*Id.* at 755 (internal citation omitted).

Accordingly, the Supreme Court reversed this Court's conclusion that the arbitrator lacked jurisdiction because the widow's exclusive remedy was via the Local Agency Law since it involved a decision of a local pension board. *Id.* at 756. On that point, the Supreme Court again stated we "did not consider the circumstances of this case, in which the pension benefits were incorporated into the CBA and both Act 111 and the CBA provide that any disputes may be resolved through arbitration." *Id.*

We agree with common pleas that, under the facts here, *City of Arnold* would ordinarily control which forum was appropriate to bring an action challenging a police officer's pension calculation and that forum would be through the grievance arbitration procedure set forth in the relevant CBA. The pension, which is statutorily provided by the Third Class City Code, was memorialized in a City ordinance, (R.R. at 453a-60a), and incorporated into the CBA, (*id.* at 421a-24a), similar to the pension benefit at issue in *City of Arnold*. Consistent with Act 111, which requires a municipal employer to bargain over the terms and conditions of employment, including pensions, the CBA further provides that "[g]rievances **shall** include **any and all** disputes," and should the dispute reach arbitration, the final step of the grievance process, the arbitrator's decision is "**final and binding**." (CBA §§ 41.1.1, 41.2.3, R.R. at 438a (emphasis added).)

To fully resolve the jurisdictional issue, though, we must also examine standing to determine whether the grievance procedure set forth in the CBA was

11

available for Appellant, as a retiree, to bring an action challenging his pension calculation. This is because if the issue of his pension calculation could not be grieved, Appellant had to have some forum in which to challenge it. *City of Arnold* may provide an arbitrator has subject matter jurisdiction over a pension dispute, but the issue of standing to pursue relief through that forum is a different inquiry.[13]

Appellant argues he neither filed, nor could file, a grievance challenging the pension calculation as he lacked standing to do so. For support, he cites *Lee v. Municipality of Bethel Park*, 626 A.2d 1260 (Pa. Cmwlth. 1993). Therein, we held former municipal police officers lacked standing to challenge an Act 111 arbitration and subsequent enactment of an ordinance implementing the arbitration award. The trial court had sustained preliminary objections, concluding the officers lacked standing. On appeal, we held, in relevant part, that "absent a specific provision in a [CBA]," an individual lacks standing to challenge an arbitration award. *Id.* at 1262 n.3; *see also Township of Hellam v. Hellam Twp. Police Officers' Ass'n*, 722 A.2d 740, 745 (Pa. Cmwlth. 1998) ("It is well settled that, absent a specific provision in a

---

[13] "[T]he question of standing is distinct from that of subject matter jurisdiction." *Soc'y Hill Civic Ass'n v. Pa. Gaming Control Bd.*, 928 A.2d 175, 178 n.2 (Pa. 2007). "Subject matter jurisdiction concerns the competency of the [tribunal] to determine controversies of the general class to which the case presented for its consideration belongs." *In re Nomination Petition of deYoung*, 903 A.2d 1164, 1168 (Pa. 2006) (quotation marks and emphasis omitted). Standing, on the other hand, relates to the ability of a party to bring an action. *Chester Upland Sch. Dist. v. Rossi*, 275 A.3d 1117, 1124 (Pa. Cmwlth. 2022). Standing is not a jurisdictional issue and, as a result, cannot be raised *sua sponte*. *In re Nomination Petition of deYoung*, 903 A.2d at 1168. "Our Supreme Court has recognized that the traditional 'standing' paradigm does not apply to the appeal of an arbitration award." *Miles v. FOP Lodge #5*, 217 A.3d 892, 894 n.2 (Pa. Cmwlth. 2019) (citing *Kozura v. Tulpehocken Sch. Dist.*, 791 A.2d 1169, 1172 n.6 (Pa. 2002)). "Instead, standing to appeal an arbitration award is one based on contractual rights and must be found in the applicable [CBA]." *Id.* (citing *Fraternal Order of Police, Lodge #5 v. City of Philadelphia*, 182 A.3d 1076, 1080 (Pa. Cmwlth. 2018)).

CBA, an individual employee has no standing to request arbitration.") (citation omitted).[14]

When determining whether a bargaining unit has standing to pursue a grievance on behalf of a retiree, we employ a similar analysis, looking to the terms of the CBA:

> [A]lthough the retirees are not part of the current bargaining unit, this does not omit them from the benefits bargained for them by a prior bargaining unit that negotiated a previous CBA. If the [employer] violates a provision of a CBA that was in effect when the retiree retired, the [u]nion has standing to file a grievance on behalf of the retiree against the [employer], depending upon the language of the CBA.

*Hempfield Area Sch. Dist. v. Pa. Lab. Rels. Bd.*, 920 A.2d 222, 226 (Pa. Cmwlth. 2007). The CBA there provided the union could initiate a grievance on behalf of "persons," not employees, and thus was broad and encompassed retirees. *Id.* (citing *Danville Area Sch. Dist. v. Danville Area Educ. Ass'n, PSEA/NEA*, 754 A.2d 1255, 1262 (Pa. 2000)).

---

[14] The rationale behind this principle was described as follows:

> To view this type of agreement otherwise would lead to chaos and a breakdown in the entire scheme of collective bargaining for which the parties have provided and contracted. Instead of being able to rely on the disposition of employee grievances through the established machinery, the [employer] would face the constant threat of attempted individual enforcement through litigation. Union responsibility would be diminished and all parties would suffer. For these reasons, most, if not all, [u]nion management agreements of any magnitude in force throughout the Commonwealth are similarly drafted, with an eye towards reposing enforcement responsibility in the labor organization concerned.

*Falsetti v. Loc. Union No. 2026, United Mine Workers of Am.*, 161 A.2d 882, 894 (Pa. 1960). In addition to the rationale cited by the Supreme Court, this Court proffered a second rationale in *Township of Hellam*: "unless the CBA provides otherwise, the individual employee is not a party to the CBA and, thus, cannot enforce the rights granted under the CBA." 722 A.2d at 745.

On the other hand, the CBA in *Harris v. Borough of West Hazleton* (Pa. Cmwlth., No. 963 C.D. 2022, filed October 13, 2023),[15] *appeal denied*, (Pa., No. 634 MAL 2023, filed April 24, 2024), was not as broad, defining a grievant as "any individual or group of bargaining unit employees, or their bargaining representatives." *Id.*, slip op. at 5. The trial court held a grievant had to be "an individual bargaining unit employee, a group of bargaining unit employees, or their bargaining representatives." *Id.* On appeal, the borough argued the term "individual" should be read apart from the remainder of the phrase, such that an individual (whether actively employed or retired), a group of bargaining unit employees, or their bargaining representative could pursue a grievance. *Id.* at 7. We rejected this interpretation and determined the retired police officer there could not avail himself to the grievance procedure set forth in the relevant CBA because it was silent as to whether retired police officers were bound by its grievance procedures. *Id.* at 9. Instead, we held "[t]he grievance process only governs a dispute over disability retirement benefits when a police officer's right to such benefits has yet to be determined." *Id.* We further explained that the trial court's interpretation was "consistent with the last antecedent rule," which provides that "when several words are followed by a modifying phrase, the language demands that the modifying phrase applies as much to the first words as it does to the last." *Id.* (citing *Summit Twp. Indus. & Econ. Dev. Auth. v. County of Erie*, 980 A.2d 191, 208 (Pa. Cmwlth. 2009)).

---

[15] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

14

Thus, we affirmed the trial court's interpretation but remanded for a calculation of the retired officer's cost of living adjustment increase to his pension benefits.[16]

We reached a similar result in *Borough of Dunmore v. Arnone* (Pa. Cmwlth., No. 783 C.D. 2019, filed March 6, 2020), slip op. at 8, where we held that because the CBA provided only for "employees" to grieve and arbitrate, the retired firefighters were not subject to the mandatory dispute resolution process contained in the CBA because they were no longer "employees."

Our relatively recent decision in *Edgell v. City of Aliquippa*, 272 A.3d 1011 (Pa. Cmwlth. 2022), is particularly informative as it presents somewhat analogous facts to those presented here. In *Edgell*, a retired police officer filed a complaint in a common pleas court asserting breach of contract claims against his former municipal employer, alleging he did not receive certain payments to use towards the purchase of health insurance or retroactive pay increases to which he contended he was entitled. His municipal employer filed a preliminary objection, asserting a lack of subject matter jurisdiction because the Public Employe Relations Act (PERA)[17] and the parties' CBA set forth mandatory grievance and/or arbitration procedures, which he did not pursue. *Id.* at 1016. The common pleas court ultimately sustained the preliminary objection and dismissed the complaint, leading to an appeal to this Court. *Id.* Before this Court, the retired police officer argued the grievance procedure was inapplicable to him, as it only applied to employees and he was no longer an employee since he retired. *Id.* at 1016-17.

---

[16] Although the trial court's order was not technically a final order disposing of all parties' claims, we granted a petition for permission to appeal the interlocutory order pursuant to Pennsylvania Rule of Appellate Procedure 1311(a)(1), Pa.R.A.P. 1311(a)(1). *Harris*, slip op. at 6.

[17] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.

15

To determine whether the retired police officer was required to utilize the grievance procedure, consistent with precedent, we looked to the terms of the CBA. *Id.* at 1021. We explained that the CBA there "specifically addressed retirement benefits and made reference to 'retirees'" in the article pertaining to pension benefits. *Id.* at 1020. Moreover, we stated the ordinance setting forth the pension plan, which was incorporated into the CBA, also provided that the grievance and arbitration provisions of the CBA applied to pension contests. *Id.* at 1020 n.15. We further explained that the CBA provided that "[a]ll grievances which may arise by virtue of this [CBA] or otherwise," except those pertaining to suspension or termination, were subject to the grievance procedure set forth therein. *Id.* at 1020 n.15, 1021. Because the complaint filed alleged payment was not made in accordance with the CBA, we determined the exclusive remedy was the grievance procedure set forth therein, which was not pursued, and the trial court lacked subject matter jurisdiction over the complaint. *Id.* at 1021.

Although the CBA's grievance steps provided that an "employee" dissatisfied with the disposition of a grievance could seek arbitration, (*id.* at 1017-18 (quoting article XV, section 2 of the applicable CBA)), we nonetheless determined the CBA did apply to the retired police officer. In so holding, we distinguished the matter from this Court's memorandum opinion in *Borough of Dunmore*, stating there, the Court only referenced the portion of the CBA that stated the grievance procedure referred to "employees," whereas here, a review of the CBA as a whole indicated an intent that such disputes proceed through arbitration. *Id.* at 1020 n.15.

Turning to the instant matter, the CBA here provides that "[g]rievances shall include **any and all disputes** between a **member(s)** and . . . [the] City." (CBA § 41.1.1, R.R. at 438a (emphasis added).) It further provides that to initiate the first

step of the grievance process, "[t]he **member**, either **alone** or accomplished by a **representative of the bargaining unit or the bargaining unit itself**, shall present the grievance in writing to the Chief of Police within thirty (30) days of its occurrence or knowledge of its occurrence." (CBA § 41.1.2, R.R. at 438a (emphasis added).) Step 2 of the grievance procedure also provides that a "**member**, or the **bargaining unit representative**," may appeal to the mayor. (CBA § 41.1.3, R.R. at 438a (emphasis added).) However, Step 3 only allows the "**bargaining unit representative**" to request arbitration. (CBA § 41.1.4, R.R. at 438a (emphasis added).)

Appellant, upon his retirement, was no longer a "member" of the Union. Thus, on the face of the grievance provision alone, it appears that Appellant would lack standing to pursue the grievance procedure. However, viewing the CBA more holistically as we did in *Edgell*, we conclude Appellant and/or the Union on his behalf had standing to challenge the pension calculation. Similar to the CBA in *Edgell*, the CBA here refers to retired police officers in the article concerning pensions. (R.R. at 421a.) However, perhaps more persuasive that the CBA was intended to confer standing on Appellant, at least for purposes of challenging his pension, is that the CBA specifically references Appellant **by name** as electing Plan A in the pension article. (*Id.* at 422a.)[18] If a reference to "retirees," generally, was sufficient to require the retired officer in *Edgell* to pursue arbitration, the fact that the CBA actually identifies Appellant **by name** in this case likewise does. *See Coaldale Borough v. Delaney*, 177 A.3d 1039, 1044 (Pa. Cmwlth. 2018) ("Given

---

[18] In fact, the CBA identifies all the officers who elected Plan A and Plan B, and states that "[a]ll other officers currently employed" chose Plan C. (R.R. at 421a-23a.) Officers hired after January 1, 2002, have a separately calculated benefit, which is to be "made in strict compliance with the provisions of the Third Class City [C]ode." (*Id.* at 423a.)

17

that the widow of an eligible member of the police was entitled to file a grievance following a determination by the [c]ity's police pension board in *City of Arnold*, certainly . . . a covered member of the [b]orough's police pension plan pursuant to the [o]rdinance, and a party to the [e]mployment [a]greement, must likewise be entitled to arbitrate the matter of his service-related disability pension.")[19] Furthermore, Appellant was the only remaining participant in Plan A at the time of his retirement. (FOF ¶¶ 12, 19.) Thus, like the widow in *City of Arnold* who, as the survivor, was "the only party remaining to dispute the [c]ity's administration of" survivor pension benefits, Appellant was "the only party remaining to dispute [] City's administration of" Plan A pension benefits in dispute here. *City of Arnold*, 171 A.3d at 755.

Moreover, although the pension ordinance here, which was incorporated into the CBA, does not explicitly state that disputes involving pensions are subject to the CBA's grievance procedure, such as the one in *Edgell*, it does state that "the City's police pension plan and the distribution of police pension benefits have been amended and clarified by various City ordinances, [CBAs,] and **arbitration**

_____

[19] In *Coaldale Borough*, a police chief requested a disability pension, which, following a hearing, was denied by the borough's pension board. The police chief did not appeal the denial and instead filed a grievance alleging the borough violated the terms of his employment agreement. 177 A.3d at 1040. The borough sought to quash a request for arbitration pursuant to the grievance procedure, arguing the pension board was a local agency subject to the Local Agency Law and that the police chief's only recourse was to appeal the pension board's decision, which he did not do. *Id.* The trial court agreed that the police chief's exclusive remedy was under the Local Agency Law. *Id.* On appeal, the police chief argued the trial court erred because the parties' employment agreement mandated arbitration. *Id.* at 1041. The borough argued that because the police chief sought and obtained an adjudication from the pension board, he waived any jurisdiction an arbitrator may have had. *Id.* at 1043. We concluded the CBA between the parties was similar to that at issue in *City of Arnold* and therefore, pursuant to *City of Arnold*, the pension-related issue was arbitrable. *Id.* at 1044. Thus, we reversed the trial court's order quashing the arbitration request. *Id.*

18

**awards**." (*Id.* at 453a (emphasis added).) "A court may use evidence of past practices between the parties to interpret a CBA." *Fraternal Order of Police, Lodge #5 v. City of Philadelphia*, 182 A.3d 1076, 1080-81 (Pa. Cmwlth. 2018). The grievance provision of the CBA is extremely broad, providing "[g]rievances shall include **any and all disputes** . . . including matters involving interpretation of this agreement, all matters of discipline and all matters involving the Heart and Lung Act." (R.R. at 438a (emphasis added).)

## IV. CONCLUSION

In sum, because the grievance procedure set forth in the CBA was the exclusive method of challenging Appellant's retirement benefit, and Appellant had standing to do so, common pleas did not err in concluding that it lacked subject matter jurisdiction over Appellant's Petition pursuant to *City of Arnold*. Stated another way, Appellant could not circumvent the grievance and arbitration procedure in hopes of obtaining a more favorable result from common pleas.[20] Accordingly, we affirm common pleas' Order.[21]

---

**RENÉE COHN JUBELIRER,** President Judge

---

[20] To the extent Appellant argues he was not a party to the arbitration, only the Union was, and therefore, he could not appeal it, this does not alter our conclusion that common pleas lacked jurisdiction over his Petition. The failure of a bargaining unit to appeal an arbitration award does not confer standing on an individual to do so. *Krenzelak v. Canon-McMillan Sch. Dist.*, 566 A.2d 346, 348 (Pa. Cmwlth. 1989). Instead, Appellant's remedy is to file an independent action asserting a breach of the Union's duty of fair representation. *Id.*

[21] Given our conclusion that common pleas lacked subject matter jurisdiction over the Petition, it is unnecessary to reach Appellant's other arguments.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Zipovsky, :
                 Appellant :
                 :
            v. : No. 1063 C.D. 2023
                 :
City of Hazleton Aggregated Pension :
Board, City of Hazleton, and Mayor :
Jeff Cusat :

## O R D E R

**NOW**, October 8, 2024, the Order of the Court of Common Pleas of Luzerne County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge